IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| TARYN A. MELVIN,<br><br>  Plaintiff,<br><br>vs.<br><br>DOUGLAS A. COLLINS, Secretary of Veterans Affairs;<br><br>  Defendant. | **8:23CV566**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Plaintiff Taryn A Melvin's amended complaint filed on September 10, 2025. Filing No. 1. Plaintiff was granted leave to proceed in forma pauperis. The Court now conducts an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

### I. APPLICABLE LEGAL STANDARDS ON INITIAL REVIEW

The Court is required to review in forma pauperis and prisoner complaints to determine whether summary dismissal is appropriate. *See* 28 U.S.C. § 1915(e); 28 U.S.C. § 1915A. The Court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014)

(quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Plaintiffs must set forth enough factual allegations to "nudge[ ] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"A pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted). This means that "if the essence of an allegation is discernible, even though it is not pleaded with legal nicety, then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Stone v. Harry,* 364 F.3d 912, 915 (8th Cir. 2004). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980).

A plaintiff need not plead facts sufficient to establish a prima facie case of employment discrimination in his or her complaint. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12 (2002) (holding a complaint in employment discrimination lawsuit need not contain "facts establishing a prima facie case," but must contain sufficient facts to state a claim to relief that is plausible on its face), abrogated in part on other grounds by *Twombly,* 550 U.S. at 570. However, the elements of a prima facie case are relevant to a plausibility determination. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 54 (1st Cir. 2013) (stating elements of a prima facie case are "part of the background against which a plausibility determination should be made" and "may be used

as a prism to shed light upon the plausibility of the claim"); *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) ("While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim.").

## II. SUMMARY OF AMENDED COMPLAINT

Plaintiff sues Douglas A. Collins, Secretary of Veterans Affairs for employment discrimination and retaliation. Liberally construed, the following allegations were raised in Plaintiff's amended complaint.

Melvin is an African American female, and the only African American on her team. She is Baptist and has a heart condition.

When Plaintiff was hired as a GS-3 Medical Support Assistant (MSA) at the Department of Veterans Affairs (VA), she did not receive the standard procedure manual which was routinely given to her white colleagues and contrary to the express language of the Veteran Affairs handbook, was not given proper guidance and resources for an entry level MSA position. She was left alone to work unsupervised on the wards and believes she should have been paired with her more advanced white colleagues to minimize her errors.

Plaintiff disclosed her heart condition, but the VA failed to accommodate her medical needs, coercing her to accept evening shifts which were not suitable for her health. Although her supervisor, Maria Laws, had promised she would assist Plaintiff in securing another position within the VA, Laws did not help with Plaintiff's job search and refused to hire Plaintiff as a day shift MSA. Laws offered Plaintiff several evening shift MSA positions and tried to assign Plaintiff to the evening shift more than once, but Laws never intended to hire Plaintiff as a day shift MSA. Plaintiff believes she was never considered for a day shift position because she is black.

Plaintiff applied for the Purchasing Specialist position at the VA by emailing her resume and credentials to Laws and highlighting her twenty-year purchasing experience before being hired at the VA. Plaintiff was not selected for the position, ostensibly because she lacked customer service experience. But Laws deliberately sabotaged the application during the hiring process by making negative comments about Plaintiff. Plaintiff asserts she was not hired because she is black.

When a day shift MSA position opened, Plaintiff applied. But Laws hired Heather Glenn, who is white, worked in Environmental Management Services, and had no prior MSA experience. Plaintiff was more qualified due to her experience and believes she was completely bypassed for this position because she is black. Laws explicitly stated that the day shift was reserved for white employees and on February 16, 2021, explicitly conveyed in an email that the day shift is a coveted position for white employees.[1] White employees at the VA receive preferential assignments, advantageous work schedules, and unwarranted recognition.

Laws would not allow Plaintiff to greet visitors or patients. Laws is Catholic, Plaintiff is Baptist, and Laws' actions were clearly motivated by bias.

At some point, Plaintiff submitted a discrimination claim. Thereafter, Laws allegedly undermined Plaintiff's ability to find a different job within the VA. Laws also sent documents to Human Resources which misidentified Plaintiff's position level as a GS-6 rather than an entry level GS-3, misrepresented Plaintiff's qualifications, and falsely stated that compared to the expectations of a GS-6 employee, Plaintiff had performance issues. On May

---

[1] The court notes that the email attached to Plaintiff's complaint does not state that the coveted day shift was reserved for white employees. It states day shift positions are often held by those who had worked longer at the VA. However, for the purposes of this initial review, the Court will assume Plaintiff is referring to a different email.

4

25, 2021, Laws stated Plaintiff abandoned her post and did not return, but this accusation was untrue. Laws also collaborated with Jo Meier to create an undated and misleading document without the necessary witness signatures. Plaintiff alleges Laws made these verbal and written accusations in response to Plaintiff filing a complaint of discrimination. Plaintiff challenged Laws' accusations with no response from the VA. Her employment was terminated on June 21, 2021.

Plaintiff alleges that due to the treatment she received at the VA, she has debilitating headaches, insomnia, elevated stress levels due to her heart condition, and constant restlessness. Her wrongful termination severely limited her ability to find new employment and unjustly damaged her reputation.

Plaintiff seeks monetary compensation for lost wages resulting from the wrongful termination, a formal acknowledgment that she was wrongfully terminated, compensatory damages for mental distress and anguish, punitive damages, and reversal of her wrongful termination to place her in an Advanced Medical Support Assistant position.

### III. DISCUSSION

**A. Title VII Discrimination**

Liberally construed, Plaintiff alleges the VA failed to adequately train her for the MSA position, failed to hire her for a day-shift position, and terminated her, all in violation of her rights under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17. Under Title VII, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

5

1. **Discrimination based on Religion**

Plaintiff briefly alleges she was discriminated against for being Baptist, not Catholic. There are no factual allegations to support a Title VII religious discrimination claim.

2. **Disparate Treatment based on Race**

   i.   **Failure to Train**

Plaintiff alleges she is black, was hired to perform a GS-3 MSA position, was not adequately trained or assisted to learn to perform it correctly, and she was then criticized and ultimately terminated for poor job performance. To raise a claim of disparate treatment based on failure to train, a plaintiff must do more than make general allegations that white employees received the training she wanted while she was employed by the defendant. The plaintiff must allege she was similarly situated to the white employees who received more training—that they worked the same positions during the same time frame. *Bennett v. Nucor Corp.*, 656 F.3d 802, 819 (8th Cir. 2011). Here, Plaintiff alleges only that she did not receive the standard procedure manual that white employees received. She does not allege whether and how that manual would have assisted in understanding her specific job assignments. While she claims she should have worked with more skilled employees until she learned the job, she does not allege white MSA employees were afforded this opportunity. Plaintiff has failed to allege a disparate treatment claim of failure to train due to racial discrimination.

   ii.  **Preferential Treatment of White Employees**

Plaintiff alleges white employees at the VA received preferential assignments, advantageous work schedules, unwarranted recognition, and day shift positions that were not provided to black employees. She alleges she requested a day shift position and was promised assistance in finding such a

position, but after accepting a night shift job, was told only white employees were allowed to work as MSAs on the day shift.

To prove an unlawful disparate impact case, Plaintiff must show the VA used a particular employment practice that caused a disparate impact on her based on race. *Id*. Here, Plaintiff alleges the VA reserves day shift MSA positions for white employees, negatively impacting the ability of black employees to work better hours and assignments. Plaintiff alleges she was directly impacted by this practice because despite the VA's promises (unfulfilled) and her repeated efforts, she was denied day shift hours. Plaintiff's allegations are enough (barely) to "nudge" Plaintiff's disparate impact claim across the line to plausible. *Twombly*, 550 U.S. at 569-70. Plaintiff's complaint adequately states a disparate impact claim.

### 3. Failure to Hire based on Race

Plaintiff alleges she was not hired to perform a day shift position because she is black. To recover for failure to hire, Plaintiff must show (1) she is a member of a protected class; (2) she was qualified for the position for which the employer was accepting applications; (3) she was denied the position; and (4) the employer hired someone from outside the protected class. *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 975 (8th Cir. 2006) (citing *Kobrin v. Univ. of Minn.*, 34 F.3d 698, 702 (8th Cir.1994)). Here, Plaintiff alleges she is black, she was qualified for a day shift MSA position, she was not hired, and Heather Glenn, a white person with no prior MSA experience, was hired instead. Plaintiff alleges she was told only white persons were allowed to perform day shift MSA jobs. Liberally construed, as to the MSA position for which Glenn was hired, Plaintiff's complaint alleges a Title VII claim for failure to hire due to race discrimination.

Plaintiff also applied for a Purchasing Specialist position. She alleges she was qualified for the position based on prior experience outside the VA

system, but she was not hired. Plaintiff does not allege that a white person was hired for the job, and she has not alleged how her prior experience made her qualified for the VA position. Plaintiff has failed to allege a claim of failure to hire her as a Purchasing Specialist based on race.

### 4. Title VII Retaliation Claim

Plaintiff alleges she was treated unfairly after filing a discrimination complaint. To establish a prima facie case of retaliation under Title VII, "the plaintiff must show: (1) she engaged in activity protected by Title VII; (2) she suffered an adverse employment action; and (3) a causal connection existed between her protected activity and the adverse employment action." *Sowell v. Alumina Ceramics, Inc.*, 251 F.3d 678, 684 (8th Cir. 2001) (cleaned up) (quoting *Bogren v. Minnesota*, 236 F.3d 399, 407 (8th Cir.2000)).

Submitting a claim of discrimination is protected activity, and papering a targeted employee's employment file with false and/or trivial allegations and low performance evaluations, refusing to hire for more favorable positions, and terminating employment are adverse employment actions. *Bell v. Baptist Health*, 60 F.4th 1198, 1204 (8th Cir. 2023) (termination, cuts in pay or benefits, and changes that affect an employee's future career prospects); *Ellis v. Houston*, 742 F.3d 307, 323 (8th Cir. 2014) (papering the employee's file); *Arraleh v. Cnty. of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) (failure to hire).

The remaining question is whether Plaintiff has sufficiently alleged a causal connection between filing her discrimination complaint and being denied a new position or fired. Plaintiff has not explained when, in relation to any adverse employment action, she filed her discrimination complaint or with whom she filed the complaint. She does not explain what she alleged in that complaint or against whom. There is nothing in Plaintiff's complaint to support the inference of a causal connection between Plaintiff's discrimination claim and her failure to obtain a day shift position, the evaluations claiming

inadequate job performance, failing to be hired for jobs, or her employment termination. Plaintiff's complaint fails to state a claim of retaliation in violation of Title VII. *Brown v. Conagra Brands, Inc.*, 131 F.4th 624, 628 (8th Cir. 2025).

**B. ADA Discrimination**

The ADA prohibits a covered entity from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). An employee seeking relief under the ADA for discrimination must establish that: 1) she has a disability as defined in 42 U.S.C. § 12102(2); 2) she is qualified to perform the essential functions of the job, with or without reasonable accommodation; and 3) she has suffered an adverse employment action because of his disability. *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015).

As to the first element, a person is disabled within the meaning of the ADA only if she demonstrates that she has a physical or mental impairment which substantially limits one or more of his major life activities, that she has a record of such an impairment, or that she is regarded as having such an impairment. *Amir v. St. Louis University*, 184 F.3d 1017, 1027 (8th Cir. 1999). "Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including 'caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 861 (8th Cir. 2006) (quoting 29 C.F.R. § 1630.2(I)). Here, Plaintiff alleges she has a heart condition and, liberally construed, she needed a day shift position to accommodate her heart issues. But Plaintiff's amended complaint does not explain how her heart condition impacts her major life activities and how a day

shift would accommodate that disability, or a causal connection between the disability and her employment termination. Plaintiff has failed to allege a disability as that term is defined under the ADA. *See Brown,* 131 F.4th at 627.

## IV. CONCLUSION

The Court is required to dismiss a complaint, or any portion of it, that states a frivolous or malicious claim, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2). Plaintiff's complaint fails to state an ADA claim, or a Title VII claim for discrimination based on religion, or racial discrimination for failure to train, failure to hire for the Purchasing Specialist position, or Title VII retaliation. Plaintiff has stated a potentially plausible claim for hiring Glenn rather than Plaintiff for the day shift MSA position and a disparate treatment claim for allowing only white employees to work during the day shift as a MSA.

Accordingly, this matter will proceed to service of process. **The Court cautions Plaintiff, however, that allowing his claims to proceed to service of process is not a determination of the merits of his claims or potential defenses to them**.

IT IS THEREFORE ORDERED that:

1. This case shall proceed to service of process as to Plaintiff's Title VII racial discrimination claim that Glenn, rather than Plaintiff, was hired for the day shift MSA position, and her Title VII disparate treatment claim that only white employees are allowed to work the day shift as a MSA.

2. For service of process on the defendant, the Clerk of Court is directed to complete four (4) summons forms and four (4) USM-285 forms for such Defendant using these addresses:

Attorney General of the United States
U.S. Department of Justice

950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

United States Attorney for the District of Nebraska
1620 Dodge Street, Suite 1400
Omaha, NE 68102-1506
Attn: Civil Process Clerk

Douglas A. Collins, Secretary of Veterans Affairs
Dept. of Veterans Affairs
810 Vermont Avenue NW.
Washington, DC 20420

US Veterans Affairs Department
4101 Woolworth Ave
Omaha, NE 68105

3. The Clerk of Court shall forward the summons forms and USM-285 forms together with four (4) copies of the Complaint (Filing No. 1) and four (4) copies of this Memorandum and Order to the Marshals Service. The Marshals Service shall serve the United States at the above-listed addresses by:

4. The Marshals Service shall serve the defendant by <u>certified mail</u> sent to each of the addresses in Paragraph 2 of this order within ten days after receiving the summons and documents from the Clerk of the Court.

5. The United States Marshal shall serve all process in this case without prepayment of fees from Plaintiff.

6. Federal Rule of Civil Procedure 4(m) requires service of the complaint on a defendant within 90 days of filing the complaint. However, Plaintiff is granted, on the Court's own motion, an extension of time until 90 days from the date of this order to complete service of process on the defendant.

7. Plaintiff is hereby notified that failure to obtain service of process on the defendant within 90 days of the date of this order may result in dismissal

of this matter without further notice. A defendant has 21 days after receipt of the summons to answer or otherwise respond to a complaint.

8. The Clerk of Court is directed to set a pro se case management deadline in this case using the following text: **January 20, 2026**: service of process to be completed.

9. The parties are bound by the Federal Rules of Civil Procedure and by the Local Rules of this Court. Plaintiff shall keep the Court informed of his current address at all times while this case is pending. Failure to do so may result in dismissal.

10. Because this non-prisoner case is proceeding to service of process, this case is removed from the pro se docket at the direction of the Court. The Clerk's office shall randomly assign new judges to this case and request a reassignment order from the Chief Judge.

Dated this 22nd day of October, 2025.

BY THE COURT:

_____
Cheryl R. Zwart
United States Magistrate Judge